UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

DOUGLAS A. MILLER,                )
                                  )
        Plaintiff,                )
                                  )    No. 17 C 235
    v.                            )
                                  )    Judge Sara L. Ellis
NANCY A. BERRYHILL, Deputy        )
Commissioner of Operations, Social Security )
Administration,[1]                )
                                  )
        Defendant.                )

                         **OPINION AND ORDER**

Plaintiff Douglas A. Miller seeks to overturn the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Before the Court is Miller's appeal of the Administrative Law Judge's ("ALJ") decision denying his application for DIB and the Commissioner's motion for summary judgment. Because the ALJ's analysis satisfied the requirements of Social Security Ruling 83-20 ("SSR 83-20") and properly evaluated Miller's symptoms, the Court affirms the ALJ's decision to deny his application and grants the Commissioner's motion for summary judgment.

                            **BACKGROUND**

**I.     Medical History**

On December 8, 2004, Miller had surgery performed on his left foot to fix a broken bone in that foot. AR 401. The doctor who performed surgery also noted that Miller was suffering from an acute gout attack, with a diffuse edema on his left foot at the site of the gout. AR 401.

---

[1] The Court substitutes Nancy A. Berryhill for Carolyn W. Colvin as the proper defendant in this action. Fed. R. Civ. P. 25(d).

The surgery went well, with no complications. AR 401–02. After the surgery, Miller's nurse noted that Miller reported discomfort in his foot between a three and a four on a scale of one to ten. AR 403. She also noted that Miller was using crutches to get to the bathroom. AR 403. The nurse's report further described Miller as obese and noted a history of asthma. AR 403.

After these reports, Miller's medical history is silent until February 28, 2013, when Miller saw a nurse at Greater Elgin Family Care Center ("Greater Elgin"). AR 414. Over the next two years, Miller continued follow up at Greater Elgin, seeking treatment for depression, gout, hypertension, acute gouty arthropathy, diabetes, hypertension, depression, and hyperlipidemia. AR 462, 469, 473, 476, 482, 488, 547, 554, 560, 567, 574, 595, 604. Miller also saw several specialists, including a cardiologist for his hypertension and an orthopedic specialist for his right hip pain. AR 663, 705, 708, 711, 714, 718, 728. He admitted himself to Sherman Hospital in September 2014 for acute renal insufficiency. AR 529. His doctors at Sherman Hospital diagnosed him with acute renal failure, which was likely induced by Miller's medications and new diet. AR 532. They also noted diabetes, hypertension, morbid obesity, a history of gout, and depression. AR 529. After his hospital visit, Miller began seeing a specialist for his kidney problems as well, which included chronic kidney disease. AR 625, 631, 636, 646.

Dr. Mahesh Shah conducted a radiological evaluation for the Bureau of Disability Determination Services on June 10, 2013, and he determined that Miller had a severe degree of degenerative disease of the right hip. AR 449. Also on June 10, 2013, Dr. Jorge Aliaga performed an internal medicine consultative evaluation on Miller. AR 451. Miller reported to Aliaga that he received treatment for diabetes for the past six months, that he had a history of hypertension since January 2013, and that he had suffered from gout attacks since he was 35.

AR 451. He reported two to three gout attacks per year, with the last one being in February and lasting six weeks. AR 451. Miller stated that he had hip problems since he fell from a ladder in 2004, when he also broke his foot. AR 451–52. He noted that he had pain in his right hip and could not walk more than five blocks without resting. AR 452. He was taking medication for his pain and rated his pain at a five or six out of ten. AR 452. He also noted a history of asthma. AR 452. Aliaga's physical exam revealed full range of motion in the shoulders, elbows, wrists, left hip, knees, and ankles. AR 453. He had a decreased range of motion in his right hip, however, due to pain. AR 453. His posture and gait were normal, without need of assistive device. AR 453. He did have difficulty squatting and arising due to right hip discomfort, but he could sit and stand without difficulty. AR 454. He appeared depressed. AR 454. Aliaga diagnosed Miller with diabetes, hypertension, gout, "[p]ossible degenerative osteoarthritis of the right hip aggravated by his trauma in 2004," asthma, and depression. AR 454.

Dr. Ernst Bone and Dr. R. Oh, both Disability Determination doctors, reviewed Miller's medical files and determined that, because there was "no other evidence from claimant's treating sources" from the time period between Miller's alleged onset date and his date last insured, they had to deny his claim "for insufficient evidence." AR 135, 147. They did, however, check "yes" to affirm that Miller's impairments would reasonably be expected to produce his pain and symptoms and that the medical evidence alone substantiated Miller's statements about the intensity, persistence, and functionally limiting effects of the symptoms. AR 136, 148. Dr. M. Difonso, PsyD, and Dr. Loretta McKenzie, PhD, also Disability Determination doctors, noted no information regarding a psychiatric impairment prior to the date last insured. AR 136, 148.

### III. Disability Claim and Hearing Testimony

On April 23, 2013, Miller filed for DIB. AR 218. He alleged that he became disabled on November 28, 2003. AR 218. The Commissioner initially denied his claim on July 23, 2013 and again on reconsideration on June 27, 2014. AR 153, 159. Miller requested a hearing, which was held on July 7, 2015 and at which Miller did not have counsel representing him. AR 39. Dr. James M. McKenna, a medical expert, testified at the hearing. AR 21. Although the ALJ's opinion states that Stephanie Archer, a vocational expert, also testified, the transcript of the hearing does not reflect this.

#### A. Miller's Testimony

Miller testified that his youngest son and his son's girlfriend live with him. AR 56. He was able to drive, although only about once a month prior to the hearing and once a week prior to that. AR 56. Miller stated that he did little cleaning, although he periodically washed the dishes and did some cooking. AR 57. He dressed and bathed himself when able to leave his bed, although approximately 2-3 days per week the pain and swelling in his legs prevented him from doing so. AR 57.

Miller stated he became disabled on November 28, 2003, when he fell from a ladder while decorating a Christmas tree. AR 57–59. He testified that he injured his hips, knees, and ankles, and he also broke two bones in his foot as a result of the fall. AR 59. Miller did not have insurance at the time, and so rather than immediately seeking medical attention, he confined himself to bedrest for eight days. AR 59–60. After he was still suffering symptoms, he saw a podiatrist for his pain. AR 60. After reviewing an x-ray of Miller's foot, the doctor determined that Miller had two broken bones and would need surgery, although the surgery had to wait until the swelling in Miller's feet went down. AR 60. Miller had outpatient surgery on his left foot on

4

December 8, 2004. AR 60–61. Miller stated that he could not walk for three or four months after the surgery because his feet were so swollen. AR 62. After about eight months, he testified that he was able to walk without crutches approximately once a week. AR 63. He further testified that since his surgery, he has been confined to his bed for three days each week. AR 64. Miller stated that he went to rehab for his foot, which helped him walk. AR 66. Other than the treatment discussed above, he did not have any other treatment for his foot prior to 2007. AR 67. He did not have treatment for his heart or hip prior to 2007. AR 67.

Miller did testify that he suffered gout attacks 3-4 times per year prior to 2007, and he sought treatment for those attacks. AR 67. Initially the gout attacks lasted about three days; by 2007, they lasted for two weeks. AR 67. The podiatrist who performed surgery on his foot also prescribed Miller medication for the gout, which made the outbreaks less severe and less frequent. AR 68.

Miller testified that he did not seek treatment for his hip and foot again until 2013, due to lack of resources and the fact that he did not have insurance. AR 69. He did not seek out low cost medical care or clinics because he was unaware of them—his sister "dragged" him to one in 2013 because of his condition. AR 69. He first saw a doctor again in February 2013. AR 70. Miller testified that he mentioned his hip pain at the first appointment, but the doctor wanted to focus on his blood pressure, which he found more concerning. AR 70. Miller stated that he did not go to the doctor until 2013 because he viewed going to a doctor as "a sign of weakness." AR 72. He testified that he wanted to recover through rehab on his own. AR 72.

Miller stated that he attempted to rehab himself in 2006 by going to a nearby recreation center and working with staff members there. AR 72, 75. He testified that he once went to the recreation center 183 days in a row and usually would go 3-4 days per week. AR 73. He walked

in the swimming pool, swam, lifted weights with his upper body, and did sets of exercises with his legs without weights. AR 73–74. After this rehab and prior to 2007, Miller testified that he was able to walk about 1000 steps without assistance. AR 74.

### B. Medical Expert Evidence

Dr. James McKenna testified next. McKenna testified that the record reflected that on December 8, 2004, Miller was morbidly obese. AR 78. Using Miller's height and weight at the time, McKenna calculated a BMI of 38.5. AR 78. However, McKenna stated that, with regard to Miller's foot, Miller's medical record merely reflected "somebody who may have had a fracture or two." AR 79. McKenna testified that he would have expected "perfect healing" based on the surgery performed and found no evidence in the record of any complication resulting from that surgery. AR 79. McKenna stated that the next medical records after Miller's foot surgery are from 2013, and nothing in those reports date back to 2007. AR 80.

McKenna also noted that Miller listed a history of asthma, but that asthma was "not established as a medically determinable impairment in the file." AR 80. McKenna noted that gout is listed in Miller's file prior to 2007, but that it appeared manageable and he would not expect it to be a severe problem. AR 80–82. McKenna also stated that he found no evidence of a severe medically determinable impairment regarding Miller's ankle or hip. AR 83. Looking at Miller's record for 2013, McKenna testified that he found no evidence relating his medical problems in 2013 back to 2007, although the records from 2013 did support severity after 2013. AR 85.

## IV. The ALJ's Decision

On July 17, 2015, the ALJ issued a written decision denying Miller DIB. AR 21–30. Following the five-step analysis used by the Social Security Administration, the ALJ found at

step one that Miller had not engaged in substantial gainful activity "during the period from his alleged onset date of November 28, 2003 through his date last insured of December 31, 2007." AR 23. The ALJ then proceeded to step two, concluding that Miller did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months prior to his date last insured. AR 23. In light of this, the ALJ found that Miller did not have a disability before his date last insured. AR 30.

The ALJ noted in her decision that the state agency had already determined that Miller was disabled for purposes of Supplemental Security Income ("SSI") payments but found that the medical records could not support a finding that Miller's disability occurred prior to the date last insured. AR 29. She found that Miller's testimony was not credible due to inconsistencies between his testimony and the record. AR 28–29. She placed significant weight on McKenna's testimony for his review of the medical record and to the Disability Determination doctors for their opinions that there was insufficient evidence of a severe impairment. AR 30. She also noted that she received no opinions from any of the claimant's treating sources prior to the date last insured. She concluded, "[i]n sum, the conclusion that the claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities prior to the date last insured is supported by the substantial weight of the medical evidence of record, and the conservative nature of his treatment prior to the date last insured." AR 30.

## LEGAL STANDARD

### I. Standard of Review

In reviewing the denial of disability benefits, the Court "will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with

substantial evidence." *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (citation omitted) (internal quotation marks omitted). Although the Court reviews the entire record, it does not displace the ALJ's judgment by reweighing facts or making independent credibility determinations. *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). But reversal and remand may be required if the ALJ committed an error of law or the decision is based on serious factual mistakes or omissions. *Id.* at 837. The Court also looks to "whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). "[H]e need not provide a complete written evaluation of every piece of testimony and evidence," *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)), but "[i]f a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required," *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## II.     Disability Standard

To qualify for DIB or SSI, a claimant must show that she is disabled, i.e. that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). To determine whether a claimant is disabled, the Social Security Administration uses a five-step sequential analysis. 20

C.F.R. § 404.1520; *Kastner*, 697 F.3d at 646. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ considers whether the claimant's physical or mental impairment is severe and meets the twelve-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairment(s) meet or equal a listed impairment in the Social Security regulations, precluding substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment(s) meet or medically equal a listing, the individual is considered disabled; if a listing is not met, the analysis continues to step four. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ assesses the claimant's residential functional capacity ("RFC") and ability to engage in past work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can engage in past relevant work, she is not disabled. *Id.* If she cannot, the ALJ proceeds to step five, in which the ALJ determines whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). An individual is not disabled if she can engage in other work. *Id.* The claimant bears the burden of proof on steps one through four, while the burden shifts to the government at the fifth step. *Weatherbee*, 649 F.3d at 569.

## ANALYSIS

In seeking to overturn the ALJ's decision, Miller argues that (1) the ALJ erred when she did not apply SSR 83-20 to determine the onset date of Miller's disability, and (2) the ALJ did not properly evaluate Miller's symptoms. The Court addresses each of these contentions in turn.

9

**I.    Letters Outside of the Record**

As an initial matter, Miller has submitted new evidence that was not part of the administrative record.  When reviewing the ALJ's disability determination, the Court cannot consider evidence that was not before the ALJ.  *Eads v. Sec'y of the Dep't of Health and Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).  "However, the Court can order a remand under sentence six of 42 U.S.C. § 405(g), which requires a plaintiff to show that there is 'new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'"  *Rudolph v. Colvin*, No. 12-C-1159, 2013 WL 5945788, at *1 (E.D. Wis. Nov. 5, 2013) (quoting 42 U.S.C. § 405(g)).  "Evidence is 'material' if there is a 'reasonable probability' that the Commissioner 'would have reached a different conclusion had the evidence been considered,' and evidence is 'new' if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Id.* (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)).  Miller does not provide any argument regarding these issues.  Although he is currently *pro se*, Miller was represented by counsel until shortly before he filed the reply brief, and counsel wrote both briefs.

Regardless, the Court cannot consider the newly submitted evidence because Miller cannot meet the standards for newness.  Miller began seeing his current doctor and nurse in 2013, and he could have asked them to provide their medical opinion regarding when his severe medical impairment began before his hearing with the ALJ.  He also could have sought to follow up with his podiatrist before his hearing with the ALJ.  Unfortunately, none of this evidence qualifies as new, and so the Court proceeds to review the Commissioner's decision based on the record before the ALJ.

## II. Applicability of SSR 83-20

SSR 83-20 "provides the analytical framework for determining an onset date where a claimant is disabled but it is unclear when her disability began." *Smith v. Colvin*, 208 F. Supp. 3d 931, 939 (N.D. Ind. 2016). The question at the heart of this issue is what constitutes a finding of disability sufficient to trigger SSR 83-20's procedures. Miller contends that, because the Social Security Administration found Miller disabled and eligible for SSI, the ALJ should have proceeded to determine the onset date of his disability using SSR 83-20. The Commissioner responds that SSR 83-20 only applies once the ALJ formally completes the five-step sequential analysis and concludes that the claimant is disabled.

"[B]ecause SSR 83-20 is a directive to the ALJ as to the operative ground rules and procedure that must be followed where a claimant is or has been disabled and where the claim necessitates a determination of the onset of that disability, the only precondition to the ALJ's resort to SSR 83-20 should be the fact that the ALJ has found such disability—and not the particular manner in which the ALJ has articulated that finding." *Campbell v. Chater*, 932 F. Supp. 1072, 1075 (N.D. Ill. 1996) (cited by *Schenck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004)). Other district courts in the Seventh Circuit have reached the same result as *Campbell*. *See Summers v. Berryhill*, No. 15 C 7820, 2017 WL 1178521, at *6–7 (N.D. Ill. Mar. 30, 2017) (noting that the Commissioner's SSI disability finding was "a finding of disability for Plaintiff's DIB application, triggering the application of SR 83-20"); *Smith*, 208 F. Supp. 3d at 939–40 (finding that, "where the evidence is at very least 'ambiguous' regarding the possibility that 'the onset of [the claimant's] disability occurred before the expiration of her insured status,' the ALJ should turn to SSR 83-20 to make the necessary retroactive findings" (quoting *Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir. 1997))). *But see Patterson v. Colvin*, No. 1:13-cv-00553-

11

SEB-TAB, 2014 WL 2511625, at *3 (N.D. Ind. June 3, 2014) (holding that, despite the ALJ's conclusion that the claimant was disabled at the time of the hearing, the ALJ made "no preexisting disability finding" because she decided the claimant did not have a disability prior to the date last insured, and so SSR 83-20 was not triggered).

Here, the Social Security Administration had already determined that Miller was disabled for the purposes of his SSI payments. The ALJ acknowledged this in her written decision. Miller's disability at the time of his application for DIB and hearing in front of the ALJ is undisputed on the record; at the hearing itself, both the ALJ and McKenna agreed that Miller was disabled after 2013. AR 85–86. As the ALJ acknowledged during the hearing, "under Title XVI [Miller] had already been found disabled by the state agency" and so the "only issue" in front of the ALJ was Miller "prov[ing] that [he] was disabled prior to December 31, 2007," which is the date last insured. AR 45–46. This is the same situation as that in *Summers*, and that disability finding triggered SSR 83-20. 2017 WL 1178521, at *6–7.

The Commissioner's citation of *Schloesser v. Berryhill* to support her argument that SSR 83-20 does not apply is unpersuasive, because in fact *Schloesser* supports the application of SSR 83-20 to this situation. 870 F.3d 712, 718 (7th Cir. 2017). In *Schloesser*, the Seventh Circuit noted that "SSR 83-20 only addresses the situation in which a finding is made 'that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time.'" *Id.* (quoting *Schenck*, 357 F.3d at 701). The Social Security Administration has already made a finding that Miller is disabled; thus, even by the authorities the Commissioner cites, the ALJ should have applied SSR 83-20.

## III. Application of SSR 83-20[2]

Having decided that the ALJ should have applied SSR 83-20, the Court must next decide whether the ALJ implicitly followed SSR 83-20 or whether the Court should remand the case for the ALJ to do so. Failure to explicitly refer to SSR 83-20 is not fatal "if the ALJ nevertheless conducted the requisite analysis." *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). According to SSR 83-20, where "it is impossible to obtain medical evidence establishing the precise date an impairment became disabling," "it will be necessary to infer the onset date from the medical and other evidence." SSR 83-20, 1983 WL 31249, at *2 (1983). When the ALJ must infer the onset date, the ALJ should seek the advice of a medical advisor. *Id.* at *3. SSR 83-20 provides further guidance to the ALJ regarding what to do if the file does not contain sufficient evidence to determine the onset date:

> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in the file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition.

*Id.* The ALJ may only rely on lay evidence to the extent that "it is not contrary to the medical evidence of record," and the ALJ's judgment regarding the onset date "must have a legitimate medical basis." *Id.*

Miller argues that the ALJ's analysis was insufficient to fulfill the requirements of SSR 83-20 on multiple grounds, namely: the ALJ erred (1) when she did not ask McKenna questions targeted to understand at what point it would be reasonable to infer that Miller's disability began,

---

[2] Miller argues that the Commissioner did not argue in response that the ALJ explicitly or implicitly followed SSR 83-20, and so she has waived the argument. Doc. 51 at 2. However, the Commissioner did make this argument and has not waived it. Doc. 47 at 6 ("[P]laintiff points to no legitimate medical basis relating back to the applicable disability period."). The Court will consider the argument on the merits.

13

(2) when she did not request additional information from the podiatrist who performed Miller's foot surgery in 2004, (3) when she did not attempt to determine the frequency and duration of Miller's gout attacks, and (4) when she did not explore other sources of documentation from family and friends.

The ALJ did seek the advice of a medical advisor, as directed by SSR 83-20. Looking to the transcript of the hearing, Miller's characterization of the ALJ's questioning of McKenna is incorrect. The ALJ did ask McKenna questions seeking to determine whether the medical records in the file provided any evidence relating back to the date last insured, prior to December 31, 2007. AR 85. She asks McKenna: "So there's nothing that is relating back prior to 2007 to show a severe medically determinable impairment?" AR 85. She follows up: nothing "[t]hat would support a severe medically determinable impairment?" AR 85. McKenna responds both times that nothing in the record supports such a finding.[3] AR 85.

Miller also argues that the ALJ erred when she did not follow up with the podiatrist who performed his 2004 foot surgery. In support of this argument, Miller attaches a letter from the podiatrist written subsequent to the ALJ's decision, in which the doctor noted that Miller had "verbal complaints of pain to [his] lower extremity including [his] foot, knees, and hip." Doc. 37-2. He also submits a letter from his current doctor and nurse, who state their belief that Miller "has been disabled most likely since 2004." Doc. 51 at 26. According to Miller, these letters show that the ALJ should have followed up with the podiatrist and other doctors prior to issuing her decision. However, the podiatrist had not even written the letter prior to the ALJ's decision,

---

[3] Miller argues that McKenna did not address the agency examiner's opinion that the degenerative osteoarthritis in Miller's hip was "aggravated by the trauma in 2004." AR 454. However, this speculation from the agency examination conducted in 2013 does not establish when the condition in Miller's hip became a disability, and there is nothing to suggest that McKenna did not take this assessment into account when determining that the records from 2013 onward did not support a severe medically determinable impairment prior to the date last insured in 2007.

14

and Miller represented at the hearing that the only records regarding his foot surgery were those that were in the record already. AR 43. He also testified that he tried to contact the podiatrist himself, but he was no longer in business. AR 92. With Miller himself informing the ALJ that she could not find any further records and that the podiatrist was unavailable, it is difficult to fault her for ending the inquiry there. And the ALJ did consult with a doctor, who concluded after reviewing all of the records and listening to Miller's testimony that there was no medical basis on which to find a medical determinable severe impairment prior to his date last insured. She had no reason to believe that consulting with further doctors would lead to a different result.

In addition, Miller argues that the ALJ should have developed the record further regarding his gout attacks. Again, looking to the record, the ALJ questioned Miller about his gout attacks, asking him about the nature of the attacks, how often they occurred and how long they lasted, and the type of treatment he received for the condition prior to 2007. AR 67–68. The ALJ also asked McKenna about Miller's gout, after McKenna had listened to Miller's testimony. She noted that the podiatrist's notes from Miller's 2004 surgery noted an "acute gout attack," and McKenna testified in response that gout was a "treatable disease." AR 82. When she asked him if the gout was a severe medical impairment, McKenna replied that it was not. AR 82. Miller's argument that the ALJ "failed to determine the frequency and duration of gout attacks and the corresponding functional impact" is directly contradicted by the transcript of the hearing. Doc. 37 at 13. She appropriately questioned Miller and McKenna regarding Miller's gout symptoms, and she specifically asked Miller about the frequency and duration of his gout attacks. AR 67–68.

Finally, Miller asks the Court to find that the ALJ erred when she did not seek out other sources of documentation from Miller's family and friends. He suggests that, where the ALJ

15

cannot determine the onset date from the record and the medical expert, SSR 83-20 requires the ALJ to explore other sources of documentation from family and friends. SSR 83-20 requires no such thing, however; it merely suggests that "[i]f reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation," such as seeking out "[i]information from family members, friends, and former employers." SSR 83-20, 1983 WL 31249, at *3. This language clearly imposes no requirement on the ALJ. *Cf. Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008) (noting that language in SSR 83-20 that the ALJ "should call on the services of a medical advisor when onset must be inferred" implied that "the ultimate decision was up to the ALJ" (internal quotation marks omitted)).

Moreover, the only other person present who could have testified at the hearing was Miller's sister, Marilyn Dacken. Doc. 37-1. The record reflects that Dacken would not have been helpful in establishing Miller's disability before December 31, 2007: in the function report she filled out, she noted that she "did not know the severity of his condition" for "some time" due to an estrangement. AR 300. She stated that she convinced him to go to the doctor when she found out. AR 302. If this doctor visit did not occur until 2013 due to an estrangement, Dacken may not have known about Miller's disability prior to 2007. And, based on the transcript of the hearing, the ALJ gave Miller the opportunity to have his sister testify at the end of the hearing, when she asked Miller three times if he had anything else to add to the record. AR 88, 92, 93.

Ultimately, the flaw in Miller's argument here is that SSR 83-20 requires that the ALJ's finding regarding an onset date have a legitimate medical basis. *Aulik v. Berryhill*, 711 F. App'x

16

806, 808 (7th Cir. 2018) (finding that, because the claimant did not provide any medical evidence of his disability, "[i]t is . . . difficult to see how any medical examiner could have provided an opinion, grounded in the requisite legitimate medical basis" that the claimant's disability dated back to the date last insured (internal quotation marks omitted)). Based on the record and the testimony available to her, the ALJ simply did not have a legitimate medical basis for finding an onset date prior to December 31, 2017. Analysis using SSR 83-20's framework does not fix this problem.

IV. **Symptom Evaluation**

Miller also argues that the ALJ erred in her evaluation of his symptoms. He contends that the ALJ's analysis of his credibility was too vague and that the ALJ impermissibly discredited Miller's testimony regarding his disability solely because of his lack of medical treatment without assessing the underlying reasons for his lack of treatment. Doc. 37 at 15–16. The record establishes that neither of these arguments has merit. Review of the ALJ's written decision shows that the ALJ provided multiple reasons why she did not find Miller's testimony credible. AR 28–29. She described multiple inconsistencies, both between Miller's testimony and the record and between different portions of Miller's testimony. For example, she stated that "[d]espite the extreme limitations he testified to prior to 2007, he noted that in 2006, he had stated his own rehab at a rec center where he swam, exercised in a pool, and lifted weights." AR 28. Also contrary to Miller's argument, she did consider the underlying reasons for his lack of treatment. AR 28 (Miller "did not seek medical attention or rehabilitation beyond his podiatrist, because he was determined to rehab himself").

Miller also argues that the ALJ failed to cite "crucial evidence" supporting his credibility, which was that the Disability Determination doctors who evaluated him checked "yes" to the

17

form questions of whether (1) Miller's impairment could reasonably be expected to produce his pain and (2) Miller's statements regarding the intensity, persistence, and limiting effects of the symptoms were substantiated by the medical evidence. AR 115, 147–48. However, these checked boxes say nothing of the credibility of Miller's statements regarding the length of time he has been disabled. In addition, the ALJ noted that she was giving the Disability Determination doctors' opinions weight regarding their determination that there was insufficient evidence of a severe impairment. AR 30. Unlike the ALJ decision in *Scrogham v. Colvin*, 765 F.3d 685, 698–99 (7th Cir. 2014), where the Seventh Circuit found that its review of the record generally revealed that the ALJ considered evidence about the claimant selectively, the ALJ thoroughly reviewed the record in this case. Unfortunately, that review did not result in Miller's favor, but he has not established that the ALJ erred in her decision.

## CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's decision to deny Miller's application and grants the Commissioner's motion for summary judgment [46].

Dated: February 7, 2019

_____
SARA L. ELLIS
United States District Judge